**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| Francina Smith, individually and on behalf of all others similarly situated, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.   1:16-cv-1897-RLY-DML |
| | ) |
| GC Services Limited Partnership, a Delaware limited partnership, Owners Resource Group, GC GP Buyer, LLC, a Delaware limited liability company | ) |
| | ) |
| Defendants. | ) |

**CLASS REPRESENTATIVE'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,
COMPEL ARBITRATION, AND STAY ACTION PENDING ARBTIRATION**

Class Representative, Francina Smith ("Smith"), individually and on behalf of all others similarly situated, hereby responds to Defendant's Motion to Dismiss, Compel Arbitration, and to Stay Action Pending Arbitration (Dkt. 74, 75):

**INTRODUCTION**

After over a year of litigation, Defendant GC Services ("GC")[1] belatedly asserts that the Class Representative's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") are subject to arbitration and that it is a party to a purported arbitration agreement between Ms. Smith and her original creditor.  By litigating this matter for over a year before filing its motion, Defendant GC has waived

_____

1.  Although this motion was filed by Defendant GC Services only, Defendant Owners Resource Group, GC GP Buyer, LLC ("ORG") is also a party to this lawsuit, see, e.g., Dkt. 98 at p. 5 ("Because Owners Resource Group is GC Services' general partner, a non-frivolous argument can be made that it is a debt collector based on that status."), but has not moved to dismiss the Amended Complaint.  (Dkt. 100 at p. 5).

any such right.  More importantly, Defendant GC is not even a party to the alleged

arbitration agreement.  Defendant's motion to dismiss, compel arbitration and stay this

matter pending arbitration should be denied (Dkt. 74, 75).

## FACTUAL BACKGROUND

Defendants GC and ORG sent Ms. Smith a form collection letter, dated March

17, 2016, demanding payment of a delinquent consumer debt that she allegedly owed

to Synchrony Bank/Sam's Club, and which stated, in pertinent part:

> As of the date of this letter, our records show you owe a balance of
> $3,095.00 to Synchrony Bank.  If you dispute this balance or the validity of
> this debt, please let us know in writing.  If you do not dispute this debt in
> writing within 30 days after you receive this letter, we will assume this debt
> is valid.

(Dkt. 25 at ¶ 8; Dkt. 25-3).  Section1692g(a)(3) of the FDCPA, however, imposes no

such writing requirement upon a consumer in order to dispute a debt, see, 15. U.S.C.

§1692g(a)(3).

The Class Representative's Amended Complaint,[2] sets forth that Defendants GC

and ORG violated §1692g by wrongly telling her that disputes must be in writing when,

in fact, an oral dispute is valid.  (Dkt. 25 at ¶¶12-15).  Defendants' letter also violated

§1692e and §1692f of the FDCPA because the statement -- that any dispute of the debt

must be in writing -- was false, deceptive and misleading, (Dkt. 25, at ¶¶ 16-19) and

unfair, unconscionable (Dkt. 25, at ¶¶ 20-23).  Multiple appellate and district courts –

---

2.  Plaintiff's initial Complaint was filed on July 15, 2016, naming GC and the general
partners identified at that time in all publicly available documents, GC Financial Corp
and DLS Enterprises, see, Dkt. 1, 1-1, 1-2.  Not until September 2, 2016 did Defendants
provide any evidence of the sale of the general partnership to Defendant ORG, see,
Dkt. 21, 21-1, 21-2, 21-3; the Class Representative promptly amended her Complaint to
replace GC Financial Corp and DLS Enterprises with Defendant ORG, see, Dkt. 22, 23,
25.

including this Court, in Chung v. National Check Bureau, 2005 U.S. Dist. LEXIS 15216, at *[7] (S.D. Ind. 2005)(Young, J.)  -- have all correctly held that the FDCPA does not require disputes of debt to be in writing to be valid,  see e.g., Clark v. Absolute Collection Serv., 741 F.3d 487 (4th Cir. 2014); Hooks v. Forman, Holt, Eliades & Ravin, 717 F.3d 282 (2d Cir. 2013); Camacho v. Bridgeport Fin., 430 F.3d 1078 (9th Cir. 2005); Campbell v. Hall, 624 F. Supp. 2d 991, 1000 (N.D. Ind. 2009); Rosado v. Taylor, 324 F.Supp.2d 917 (N.D. Ind. 2004); Walters v. PDI Mgmt. Servs., 2004 U.S. Dist. LEXIS 13972 at [*15]-[*17] (S.D. Ind. 2004)(Tinder, J.); Edmonds v. Nat'l Check Bureau, Inc., 2003 U.S. Dist. LEXIS 17476 at [*10]-[*12](S.D. Ind. 2003)(Barker, J.); Spearman v. Tom Wood Pontiac-GMC, Inc., 2002 U.S. Dist. LEXIS 24389 at [*25]-[*29] (S.D. Ind. 2002)(Tinder, J.).

Over the past year, Defendants failed to assert any purported right to arbitration and instead vigorously litigated this matter:

- on August 12, 2016, Defendant GC filed a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), which was fully briefed (Dkt. 16, 17, 20, 21); this motion did not assert any purported right to arbitration;

- on October 18, 2016, Defendants provided Rule 26 disclosures, which, again, did not mention any purported right to arbitration;

- on November 1, 2016, Defendants filed a second motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), which was fully briefed (Dkt. 31, 32, 35, 41), and which did not assert any purported right to arbitration;

- on November 21, 2016, Defendant GC Responded to Plaintiff's Document Production requests regarding its Affirmative Defenses as follows:

REQUEST No. 13:  All documents that refer to, relate to, or support or diminish any affirmative defense you assert.

RESPONSE: Defendant objects to the request as overbroad and vague. Further, the request invades the attorney work product privilege.

3

Defendant did not produce anything that purported to support a right to arbitration.

- in December 2016, Defendants scheduled the deposition of the Class Representative for January 27, 2017, causing her to take time off work; with only 7 days' notice, Defendants cancelled this deposition -- but continue to express their intent to depose the Class Representative, even though discovery has closed;

- on January 16, 2017, Defendants provided their preliminary Witness and Exhibit List, (Dkt. 44), which did not assert a purported right to arbitration or include any exhibits which contained an arbitration agreement;

- on February 15, 2017, Defendant GC responded in opposition to Class Certification (Dkt. 45), and did not assert any purported right to arbitration;

- on February 24, 2017, in the Parties' Joint Statement Regarding Discovery Dispute (Dkt. 47), Defendants maintained their refusal to respond to Plaintiff's Document Production Request No. 13, regarding evidence of their right to arbitrate;

- on April 19, 2017, Defendants answered Plaintiff's Amended Complaint and provided their Affirmative Defenses (Dkt. 57) – which did not include any reference to an alleged right to arbitrate the Class Representative's claims;

- on January 11, 2017, Defendants issued discovery to the Class Representative, to which she responded on February 9, 2017;

- pursuant to the Case Management Plan approved on September 11, 2017 (Dkt. 86), non-expert discovery in this matter closed on October 16, 2017;

- despite the closure of non-expert discovery on October 16, 2017, Defendant GC's pending motion to dismiss and compel arbitration and the fact that Ms. Smith lives in , and this matter is pending in, the Southern District of Indiana, on October 19, 2017, Defendants served a Notice of Deposition for Ms. Smith – to take place in Illinois, where she does not live; and,

- due to discovery disputes which necessitated multiple conferences with the magistrate judge (see, Dkt. 46, 47, 48, 90, 91, and 94), on October 12, 2017, the Class Representative was forced to file a motion to compel (Dkt. 96), which was granted in part (Dkt. 100).

Defendant GC's now claims that Ms. Smith's credit card agreement with

Synchrony Bank contained an arbitration provision which applies to her claims here

4

(Dkt. 75 at pp.5-7; 10-16; Dkt. 75-1, at exhibit 2), but Defendant provides no reason for failing to assert its purported right to arbitration for over a year of litigation.  Moreover the alleged arbitration agreement in no way applies to a non-agent/non-signatory/independent contractor, such as Defendant GC.  For these reasons, Defendant's motion should be denied.

**ARGUMENT**

In ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all well-pleaded allegations and draws all reasonable inferences in the light most favorable to the plaintiff, see, Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 862 (7th Cir. 1996).  Moreover, because a motion to compel arbitration is treated as an assertion that the Court lacks subject-matter jurisdiction, the Court may also consider background information in the form of exhibits and affidavits in that context as well, see, Fox v. Nationwide Credit, Inc., 2010 U.S. Dist. LEXIS 88654 at [*5] (N.D. Ill. 2010).  The Defendant bears the burden of demonstrating that an agreement requires arbitration, see, Fox, 2010 U.S. Dist. LEXIS 88654 at [*5], citing, Vazquez v. Cent. States Joint Bd., 547 F. Supp. 2d 833, 868 (N.D. Ill. 2008).

**I.     Defendant GC Is Not A Party To The Alleged Cardholder Agreement, Not An Agent Of The Creditor And Not Covered By Its Arbitration Clause.**

Defendant GC has not produced any evidence that the cardholder agreement allegedly at issue, which contains an arbitration provision (Dkt. 75-1, Exhibit 2) was meant to apply to them as non-signatories.  Defendants' motion repeatedly asserts the presence of such an agreement, which "obligated [Plaintiff] to submit her claims against "Defendant" in this action to single-party, binding arbitration", see, Dkt. 75, at p. 3, but the actual agreement says no such thing -- Defendants GC and ORG are not mentioned

in the credit card agreement, nor are any other third-party collectors, <u>see</u>, Dkt. 75-1, Exhibit 2 thereof, at pp. 12-13.

Defendants have provided an unsigned, form credit card agreement, which they allege was sent to Ms. Smith "at some point" after she allegedly applied for the Sam's Club credit card, on February 9, 2014, <u>see</u>, Dkt. 75-1, at p. 4, pp. 6-18.  The account agreement contains provisions related to "What Claims Are Subject to Arbitration", which states:

> If either you or **we** make a demand for arbitration, you and **we** must arbitrate any dispute or claim between you or any other user of your account, and **us our affiliates, agents, and/or Sam's Club** if it relates to your account, except as noted below.

<u>See</u>, Dkt. 75-1, at p. 12 (emphasis added); <u>see also</u>, Dkt. 75, at p. 5.  The Class Representative's lawsuit is not against GE Capital Retail Bank, Sam's Club, nor its affiliates[3], so Defendant must demonstrate that it is an agent of Sam's Club/GE Capital Retail Bank in order to avail themselves to this clause.  Defendant has failed to do so -- because it not an agent of the creditor.

### A.    Choice Of Law

As a preliminary matter, Defendant GC begins by circularly asserting that Utah law must be applied to the Synchrony cardholder agreement, which Defendants believe permits them to avail themselves to the cardholder agreement pursuant to Utah law on agency and/or equitable estoppel, <u>see</u>, Dkt. 75, at pp. 9-10.  All of the Indiana cases cited by Defendants as to choice of law, however, involve disputes between parties that

---

3.  At some point in time, GE Capital Retail Bank became Synchrony Bank, <u>see</u>, Dkt. 75-1 at ¶ 1.

were both signatories to the contracts at issue[4].  To put it simply, Defendants attempt to

utilize Utah agency law in order to prove that Utah law should be used to hold that an

agency relationship between Defendant GC and Synchrony existed.

As the Seventh Circuit held in <u>Barron v. Ford Motor Co. of Canada Ltd.</u>, 965 F.2d

195, 197 (7th Cir. 1992), "[B]efore entangling itself in messy issues of conflict of laws a

court ought to satisfy itself that there actually is a difference between the relevant laws

of the different states."

Indiana recognizes three elements of actual agency:

(1)    a manifestation of consent by the principal to the agent;
(2)    an acceptance of the authority by the agent; and
(3)    control exerted by the principal over the agent.

<u>See</u>, <u>Douglas v. Monroe</u>, 743 N.E.2d 1181, 1186 (Ind. App. 2001).

As Defendants' motion describes, Utah agency law is similar, requiring that

(1)    the principal must manifest its intent that the agent act on its behalf,
(2)    the agent must consent to so act, and
(3)    both parties must understand that the agent is subject to the principal's
       control.

<u>See</u>, <u>Sutton v. Miles</u>, 333 P.3d 1279, 1282 (Utah Ct. App. 2014).

The first two elements of an agency relationship pursuant to Indiana and Utah

law are virtually identical, while the third requirement of Utah agency law only states that

---

4.  <u>See</u>, <u>e.g.</u>, <u>Barrow v. ATCO Mfg. Co.</u>, 524 N.E.2d 1313, 1315 (Ind. Ct. App.), which
involved two signatories to a contract; <u>Allen v. Great Am. Reserve Ins. Co.</u>, 766 N.E.2d
1157, 1162 (Ind. Apr. 2, 2002), which involved claims by South Carolina and North
Carolina insurance agents against their employer for misrepresentations of the terms of
policies they were selling, in which they argued that they were exposed to liability for
misrepresentations to their customers, <u>see</u>, <u>Allen</u> 766 N.E.2d at 1160-61; <u>Homer v.
Guzulaitis</u>, 567 N.E.2d 153, 156 (Ind. Ct. App. 1991) not only involved two parties which
were each named on a contract, but which did not dispute that Minnesota law applied to
their disputes; <u>St. Paul Travelers Cos. v. Corn Island Shipyard</u>, 495 F.3d 376, 383 (7th
Cir. 2007) involved a declaratory action by an excess insurer against a shipyard, both of
whom were parties to a contract.

the parties must understand that the agent is subject to the principal's control, whereas Indiana agency law requires that the principal actually exert such control.

In any event, this Court need not resolve the dispute because it is simply inapposite, under Indiana or Utah agency law, whether Defendant GC's relationship with Synchrony was that of agent and principal, because Synchrony and Defendant GC specifically disavowed any such principal/agency relationship.  In the Master Collection Services Agreement between GC and Synchrony, Defendant GC is unequivocally defined as an independent contractor, and not an agent of Synchrony, see, excerpts from the Master Collection Services Agreement Between General Electric Capital Corporation and GC Services, LP, Exhibit A at ¶ 13.[5]

This direct disavowal of an agency relationship between Synchrony and GC is sufficient to deny that such a relationship exists pursuant to both Utah and Indiana law and, therefore, the Defendants should not be permitted to rely on the credit card agreement to force the Class Representative to arbitrate her claims here.  Defendant GC is not an agent of Synchrony under either Indiana or Utah law, and is not covered by the arbitration agreement in the credit card agreement.[6]

---

5.  Pursuant to the Protective Order entered in this matter (Dkt. 92), Defendants have designated the "Master Collection Services Agreement Between General Electric Capital Corporation and GC Services, LP" as "Attorneys' Eyes Only".  Thus, concurrently with this Response, the Class Representative is filing a motion for leave to file Exhibit A under seal.

6.  The Master Collection Services Agreement contains an integration clause which would prohibit any "side agreements" between Defendant GC and Synchrony, somehow making GC Synchrony's agent for certain purposes, see, Exhibit A at ¶ 15.

**B.     Defendant GC Is Not An Agent Of Synchrony Bank, Nor Was It Acting As Such**

As courts have widely held, a third-party, independent contractor collector, such as Defendant GC, who was not a party to an original contract, cannot force a consumer to arbitrate. In Fox v. Nationwide Credit, Inc., 2010 U.S. Dist. LEXIS 88654 at [*16]-[*21] (N.D.Ill. 2010), the district court denied a motion to compel arbitration, holding that the consumer plaintiff's claims were outside of the scope of the contract between him and the original creditor and that the defendant third-party debt collector was not covered by the arbitration clause.

Similarly, in Butto v. Collecto, 802 F.Supp.2d 443, at 449 (E.D.N.Y. 2011), the defendant collector relied on principles of agency and estoppel to argue that it could enforce an arbitration agreement to which it had not been a signatory, see, Butto, 802 F.Supp.2d at 446.  In Butto, the court found no agency relationship where such a relationship had been specifically disclaimed in the contract between the creditor and collector:

> [A]side from a general description by Collecto's attorneys of its role in this regard, Collecto initially provided no evidence showing that it had a principal-agent relationship  with AT&T or Verizon.  By contrast, in the plaintiffs' responsive pleading, Butto and Houser submitted the agreements between (1) Collecto and Verizon, and (2) Collecto and AT&T, by which Collecto agreed to collect overdue debts for these entities. Both contracts contain provisions *expressly disclaiming* that Collecto is an agent of either.

See, Butto, 802 F.Supp.2d at 448-49.

Likewise, in Lucy v. Bay Area Credit Servs. 792 F.Supp.2d 320 (D.Conn. 2011), the district court utilized Connecticut agency law (which is materially identical to Indiana law) and also found that a collection agreement which disclaimed any agency

relationship failed to establish an agency relationship, see, Lucy, 792 F.Supp.2d at 325. Moreover, the court in Lucy also found that the relationship between the collector and the creditor was insufficient to establish equitable estoppel, see, Lucy, 792 F.Supp.2d at 328. Similarly, in Mims v. Global Credit & Collection, 803 F. Supp. 2d 1349, 1356 (S.D.Fla. 2011), the district court followed the same principles to hold that, while a debt collector could have enforced an arbitration agreement as a transferee, nothing in the applicable contract would allow it to be applied to an independent contractor collector.

Indeed, Defendant GC is betrayed by their own authority on this point, see, CollegeAmerica Services v. Western Benefit Solutions, 2012 U.S. Dist. LEXIS 61802, at [*7]-[*10] (D. Utah 2012)(Dkt. 75, p. 14), which held that while a non-signatory could enforce an arbitration agreement on the theory of estoppel, the non-signatory defendant at issue there failed to prove that it had relied on the original contract; see also, NAFEP Mgmt. Co. v. Binkele 2007 U.S. Dist. LEXIS 42678, at [*5] (D. Utah 2007) (Dkt. 75, p. 14), which denied a motion to compel arbitration and held that while non-signatories could be obligated to arbitrate in some situations, it must first be established that an existing written and enforceable agreement to arbitrate exists.

Here, the examples listed by Defendant GC in an attempt to demonstrate that GC acted as an agent of Synchrony are simply insufficient to support non-signatory enforcement of arbitration via either an agency or an equitable estoppel theory. Although Defendant GC's declarant, Executive Vice-President of GC Services' Operations Mark Schordock, baldly claims that Synchrony approved all letters, including the collection letter at issue, he testified at deposition that he has no first-hand knowledge of this and, moreover, did not know who actually drafted the letter at issue,

nor which party (GC or Synchrony), nor in which department the letter's drafter would have been, see, Exhibit B, excerpts from the transcript of the deposition of Mark Schordock, at p. 11, ln. 10 to p. 12, ln. 1; p. 15, ln. 18 to p. 16, ln. 2 and lns.12-23; p. 17, lns. 1-17; p. 30, lns. 6-12.  Moreover, the audits by Synchrony of GC to determine whether GC followed its policies and procedures as far as they relate to collection letters are random selections to determine whether a letter went out within 3 days of placement and included all state specific disclosures, see, Exhibit. B., p. 14 ln. 8-14, 16-17, 21-25; p. 15, ln 1-10.

### C.    Defendant's Assertion That Plaintiff's FDCPA Claims Are Within The Scope Of The Synchrony Cardholder Agreement Is Without Merit.

Finally, the specific claims Defendant is attempting to force into arbitration are not within the scope of the alleged cardholder agreement, as Defendant baldly asserts they are, see, Dkt. 75, at p. 14.  In Fox, 2010 U.S. Dist. LEXIS 88654, at [*17] (N.D. Ill. Aug. 25, 2010), the district court held that the consumer plaintiff's FDCPA and TCPA claims were outside of the scope of the contract between him and the original creditor, stating:

> Here, Plaintiff's claim is not based on the terms of her cardholder contract. Plaintiff alleges only that NCI violated the FDCPA by leaving messages without identifying itself and without indicating that the calls were being made in an effort to collect a debt. Indeed, Plaintiff's claims are not even of a type that could be asserted in defense against a creditor suing on a breach of the cardholder agreement. The FDCPA provisions that prohibit certain conduct by "debt collectors" expressly exclude creditors calling on their own behalf, as well as their officers and employees.

See, Fox, 2010 U.S. Dist. LEXIS 88654 at [*17]; see also, Mims, 803 F. Supp. 2d 1349, 1358 ("Although the claims presume the existence of the Agreement, they do so purely for the purpose of noting there is an underlying debt. As such, the claims are not

intertwined with the Agreement between Plaintiff and Capital One").

Here, Plaintiff's FDCPA claims do not involve the terms of the cardholder agreement, do not make any claims against Synchrony, and only involve statutory claims against Defendants that are outside of the scope of the agreement and include parties not subject to the agreement.[7]  Defendants' motion to dismiss and to compel arbitration must be denied.

## II.    By Litigating This Matter For Almost A Year, Defendant GC Has Waived Any Purported Right To Compel Arbitration.

As set forth above, Defendant GC has no contractual right to compel arbitration in this matter but, even if it did, any such right has been waived.  This matter has been litigated for over a year, during which time Defendant failed to provide -- or even mention -- evidence of its alleged right to arbitrate Ms. Smith's claims.

As the Seventh Circuit has held, a party may waive the right to arbitrate through participation in litigation.  In St. Mary's Medical Center. v. Disco Aluminum Prods., 969 F.2d 585, 598-90 (7th Cir. 1992), the Court denied a motion to compel arbitration holding that a defendant's prior motion to dismiss was inconsistent a desire to arbitrate:

> Submitting a case to the district court for decision is not consistent with a desire to arbitrate. A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum.

See, St. Mary's, 969 F.2d at 598.  Moreover, the court in St. Mary's found that the defendant's delay in providing evidence of an alleged right to arbitrate unfairly

---

7.  Defendant GC argues that the credit card agreement between the Ms. Smith and Synchrony Bank somehow prevents her from continuing to proceed with this matter on a class basis, see, Dkt. 75 at pp.  15-16.  Because Defendant GC has failed to establish, however, that it had an agency relationship with Synchrony Bank, this agreement does not apply to this matter or the Class Representative's FDCPA claims.

prejudiced the plaintiff, and that the defendant's participation in extensive discovery -- to which it would not have been permitted in arbitration -- led to such prejudice, see, St. Mary's, 969 F.2d at 591.

Similarly, in Cabinetree of Wisconsin v. Kraftmaid Cabinetry, 50 F.3d 388, 390-391 (7th Cir. 1995), the Seventh Circuit held that a defendant, which had moved to compel arbitration only after it had first removed a lawsuit from state court, and then filed and lost a motion to dismiss, in addition to having sought extensive discovery and delayed responding to discovery requests from the plaintiff, had waived its right to arbitrate, see, Cabinetree, 50 F.3d at 389.  In affirming the district court's finding that the defendant had waived the right to compel arbitration, the Court found that the defendant's delay in asserting its right to force arbitration amounted to forum shopping, stating:

> The presumption that an election to proceed judicially constitutes a waiver of the right to arbitrate has not been rebutted. There is no plausible interpretation of the reason for the delay except that Kraftmaid initially decided to litigate its dispute with Cabinetree in the federal district court, and that later, for reasons unknown and with no shadow of justification, Kraftmaid changed its mind and decided it would be better off in arbitration.  Neither in its briefs nor at oral argument did Kraftmaid give any reason for its delay in filing the stay besides needing time "to weigh its options." That is the worst possible reason for delay. It amounts to saying that Kraftmaid wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration. It wanted to play heads I win, tails you lose.

See, Cabinetree, 50 F.3d at 391; see also, Grumhaus v. Comerica Securities, 223 F.3d 648, 650 (7th Cir. 2000)("[W]e have held that a court must presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute.").

13

Similarly, in Motorola Mobility v. Myriad France Sas, 2013 U.S.Dist. LEXIS 109208 (N.D. Ill. 2013), the court found that a defendant had waived any right to arbitrate a contractual claim, because it did not move to compel arbitration until after more than a year of litigation, after which time it had already ". . .filed and litigated multiple motions to dismiss, and it conducted extensive discovery, including depositions, to virtually the conclusion of fact discovery period", see, Motorola Mobility, 2013 U.S.Dist. LEXIS 109208 at [*7]-[*10]; see also, Smith v. Adams & Assocs., 2015 U.S. Dist. LEXIS 138670 at [*9], [*12]-[*13](N.D.Ill. 2015)(denying a motion to compel arbitration, where the defendant had delayed in asserting the arbitration clause until almost a year after the complaint had been filed, and had already acquiesced to the setting of a discovery cut-off and issued written discovery).

Here, in addition to having filed and lost a motion to dismiss both on the merits and for lack of standing (Dkt. 31, 32), Defendant has also engaged in discovery, opposed class certification (Dkt. 45), litigated the class notice, (Dkt. 71, 76), and has litigated discovery issues, forcing several discovery conferences with the Magistrate Judge and, ultimately, to file a motion to compel (which was granted in substantial part) (Dkt. 96, 99).

Indeed, Defendant GC here, just as the defendants in St. Mary's, Cabinetree, and Grumhaus, has substantially participated in litigation in this Court without so much as mentioning their alleged right to arbitrate the Class Representative's claims. Defendant GC's initial motion to dismiss did not mention arbitration, see, Dkt. 16, 17, 20, 21, nor did Defendants' second motion to dismiss, see, Dkt. 32, 33.  Defendant's discovery responses to questions specifically addressing affirmative defenses made no

14

mention of arbitration.  Defendant's witness and exhibit lists (Dkt. 44), and Rule 26

disclosures contained no mention of arbitration.  Defendants' opposition to class

certification (Dkt. 45) contained no mention of arbitration, nor of any class action waiver

on the part of the class representative.  Defendants' answer to the Class

Representative's complaint asserted no affirmative defense of arbitration, see, Dkt. 57.

Defendants participated in discovery, issuing written discovery to which the Class

Representative responded and scheduling a deposition with her, causing her to take

time off from her job.

Defendant's delay in asserting a right to arbitration clearly amounts to waiver.

Indeed, Defendant's motion provides no reasonable justification, whatsoever, for its

failure to assert its purported right to arbitrate this matter, based upon the Sam's Club

Credit Card Agreement (Dkt. 75-1, at Exhibit 2) [8] until August 8, 2017 -- over a year after

Defendant GC had been served with this lawsuit, see, Dkt. 13.  Although Defendant GC

makes the naked assertion that it was "in the process of verifying the existence of a

class action waiver when the Court undertook the initial [class] certification question",

(see, Dkt. 75, at p. 15) it provides absolutely no basis for this assertion.  Indeed, the

Declaration of Martha Koehler, a Litigation Support Manger at Synchrony Bank, states

---

8.  The purported arbitration agreement in this matter was not even signed by Ms. Smith
--- the application for the Sam's Club card was submitted electronically from a point-of-
sale terminal at a Sam's Club in Indianapolis, and approved that same day; a copy of
the credit card agreement was mailed to Ms. Smith sometime "thereafter", see, Dkt. 75-
1 at p. 2, ¶¶ 6-7.  The credit card agreement upon which Defendant GC relies to support
its right to arbitration is simply a form printed on March 9, 2017 from a Synchrony
database (see, Dkt. 75-1 at pp. 6-18 (Exhibit 2) at the bottom of each page), with only
Synchrony's Martha Koehler's ipse dixit that this particular agreement – from the many
form agreements it maintains in its database – was sent to Ms. Smith and applies to her
Sam's Club account.

that the cardholder agreement which Defendant alleges gives it this right was readily accessible electronically within Synchrony's systems, see, Dkt. 75-1, at p. 2, ¶ 3, and, as such, and could have been obtained by Defendants' counsel easily much earlier in this litigation.

Defendant GC has extensively litigated this matter for well over a year.  Even if Defendant GC was covered by the arbitration agreement it claims applies to Ms. Smith – and it simply is not -- Defendant has clearly waived any right to compel arbitration  of this matter, and its motion to dismiss should be denied.

## CONCLUSION

Defendant GC's belated motion to dismiss and to compel arbitration in this matter should be denied because any such alleged right has been waived by Defendant GC's decision to litigate the matter in this Court for over a year.  Moreover, even if this Court were to find that Defendant has not waived an right to arbitrate, Defendant GC has failed to establish that it is a party which may avail itself of the purported arbitration agreement in  the cardholder agreement between the Ms. Smith and Synchrony. Defendant's motion should be denied.

Francina Smith, individually and on behalf of all others similarly situated,

By: David J. Philipps_____
One of Plaintiff's Attorneys

Dated: November 20, 2017

16

David J. Philipps      (Ill. Bar No. 06196285)
Mary E. Philipps       (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com

John T. Steinkamp  (Ind. Bar No. 19891-49)
5214 S. East Street
Suite D1
Indianapolis, Indiana 46227
(317) 780-8300
(317) 217-1320 (FAX)
steinkamplaw@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2017 a copy of the foregoing **Class Representative's Response in Opposition to Defendant's Motion to Dismiss, Compel Arbitration, and Stay Action Pending Arbitration** was filed electronically. Notice of this filing was sent to the following parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.


William S. Helfand                              bill.helfand@lewisbrisbois.com
Lewis Brisbois Bisgaard Smith LLP
24 Greenway Plaza
Suite 1400
Houston, Texas 77046


John T. Steinkamp                              steinkamplaw@yahoo.com
5214 S. East Street
Suite D1
Indianapolis, Indiana 46227


/s/ David J. Philipps_____
David J. Philipps
Philipps & Philipps, Ltd.
9760 South Robert Road
Suite One
Palos Hills, Illinois 60465
davephilipps@aol.com