UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FRANCINA SMITH, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) GC SERVICES LIMITED ) PARTNERSHIP, a Delaware limited ) partnership, ) OWNERS RESOURCE GROUP, and ) GC GP BUYER, LLC, a Delaware limited ) liability company, ) ) Defendants. ) | 1:16-cv-01897-RLY-DML |

**ENTRY ON DEFENDANT GC SERVICES LIMITED PARTNERSHIP'S MOTION TO DISMISS, COMPEL ARBITRATION, AND STAY ACTION PENDING ARBITRATION**

Plaintiff, Francina Smith, individually and on behalf of all others similarly situated, filed an Amended Class Action Complaint against the Defendants, GC Services Limited Partnership and Owner Resource Group GC GP Buyer, LLC, alleging they sent her and the putative class a debt collection letter that violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Over a year later, GC filed the present motion to compel arbitration and stay this action pending arbitration. Plaintiff opposes the motion on two grounds. First, she argues GC is not subject to the alleged arbitration agreement set forth in Plaintiff's Sam's Club MasterCard Agreement. Second, she argues GC waived its right to arbitrate by

1

participating in this case for over a year without ever mentioning its alleged right to arbitrate.

**I.     Background**

On February 9, 2014, Plaintiff applied for a Sam's Club Discover Card through Synchrony Bank, formerly known as GE Capital Retail Bank.  (Filing No. 75-1, Declaration of Martha Koehler ¶ 6).  She was approved, and a copy of the credit card and credit card agreement were mailed to Plaintiff.  (*Id.* ¶¶ 7-8).  In June 2014, the Sam's Club Discover Card program ended, and was replaced with the Sam's Club MasterCard program, and she was issued a new card ending in -2836.  (*Id.* ¶ 10).  Except for a few changes inapplicable to this case, the terms of Plaintiff's prior Sam's Club Discovery Card applied equally to her MasterCard account.  (Filing No. 112, Credit Card Terms at 16).

**A.     Terms of Plaintiff's Credit Card Agreement**

The Credit Card Agreement between Plaintiff and Synchrony Bank contains a section entitled "RESOLVING A DISPUTE WITH ARBITRATION," which reads, in relevant part:

> **PLEASE READ THIS SECTION CAREFULLY.  IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION.  THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

- **What claims are subject to arbitration**

    1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Sam's Club if it relates to your account
    . . . .

- **No Class Actions**

    **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION.**

(Filing No. 75-1, Ex. 2, Credit Card Agreement at 7). The term "us" is defined as Synchrony Bank.[1]

### B. GC's Collection Letter

GC collects debts on credit cards issued by Synchrony Bank pursuant to a Master Collection Services Agreement ("MCSA"). (Filing No. 75-2, Declaration of Mark Schordock ("Schordock Decl.") ¶¶ 1-2; Filing No. 102, MCSA). On March 17, 2016, Synchrony placed Plaintiff's MasterCard account with GC for collection, and on that same day, GC sent Plaintiff a form collection letter which reads, in relevant part:

> As of the date of this letter, our records show you owe a balance of $3,095.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please let us know in writing. If you do not dispute this debt in writing within 30 days after you receive this letter, we will assume this debt is valid.

---

[1] Synchrony was formerly known as "GE Capital Retain Bank." Consequently, the Credit Card Agreement actually states, "GE Capital Retain Bank may be referred to as 'we,' 'us' or 'our.'" (Credit Card Agreement Section III).

3

(Filing No. 25-3, Collection Letter). The text of Section 1692g(a)(3) of the FDCPA, however, provides that a consumer need only "dispute[] the validity of the debt."

Plaintiff's original Class Action Complaint was filed on July 15, 2016. (Filing No. 1, Compl.). Her Amended Class Action Complaint, filed on October 18, 2016, alleges that Defendants violated Section 1692g by wrongfully informing Plaintiff that disputes must be in writing when, in fact, an oral dispute is valid. (Filing No. 25, Amended Compl. ¶¶ 12-15). She alleges GC's letter also violated Sections 1692e and 1692f because the statement—that any dispute of the debt must be in writing—was false, deceptive, and misleading, (*id.* ¶¶ 16-19), and unfair and unconscionable, (*id.* ¶¶ 20-23).

### C. Procedural History

On March 10, 2017, after GC filed two Motions to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under 12(b)(6), GC notified Plaintiff by letter that it was provided information from Synchrony Bank that the Sam's Club Discovery Card contains an arbitration agreement and class action waiver. (Filing No. 112-1, Letter). The letter asked Plaintiff to confirm, by the close of business on March 13, 2017, her agreement to comply with the alleged agreement to arbitrate. (*Id.*). Plaintiff apparently never responded.

On April 19, 2017, GC filed an Answer to Plaintiff's Amended Class Action Complaint. (Filing No. 57, Answer). For reasons unknown, GC's Answer failed to assert the existence of the arbitration agreement as a defense. (*Id.*). Between the time GC filed its Answer and the present Motion to Compel Arbitration (August 7, 2017), the

4

court denied[2] Defendants' Motion to Dismiss Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under 12(b)(6). (Filing No. 64, Entry). The court also granted Plaintiff's Second Amended Motion to Certify Class (Filing No. 69, Entry). And discovery disputes necessitated multiple conferences with the Magistrate Judge. (*See e.g.*, Filing Nos. 46, 47, 48, 49, 67).

## II. Discussion

### A. Applicability of the Cardholder Agreement

It is undisputed that GC is not a signatory to Plaintiff's Credit Card Agreement. Nevertheless, GC argues it is entitled to enforce the arbitration clause because it is an agent of Synchrony Bank.

As observed by Plaintiff, the contractual relationship between GC and Synchrony Bank is defined by the MCSA. It reads, "[GC] is an independent contractor. Nothing in this Agreement shall be construed to create a partnership, joint venture, or agency relationship between the parties." (MCSA ¶ 13). GC responds that an independent contractor may act in an agency role. Here, GC argues, it was Synchrony's agent because it had at least apparent authority to undertake collection efforts on behalf of Synchrony Bank, GC was required to follow Synchrony Bank's policies and procedures, and the collection letters GC sent on its behalf had to be pre-approved by Synchrony Bank. (Schordock Decl. ¶¶ 3-6).

---

[2] The first Motion to Dismiss was denied as moot because Plaintiff filed her Amended Class Action Complaint.

5

As noted above, the arbitration provision at issue reads, "If either *you or we* make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Sam's Club . . . ." (Credit Card Agreement, Section III at 7) (emphasis added). GC's argument focuses on the clause involving disputes between "you . . . and us, our affiliates, agents and/or Sam's Club . . . ." That clause is not triggered, however, unless a demand for arbitration is made by either Plaintiff or Synchrony Bank. (*See id.* at 4 (defining "us" as the bank)). Here, the demand for arbitration is made by GC. Therefore, the court need not determine whether GC was an agent of Synchrony Bank because Synchrony Bank did not *demand* arbitration in the first place. GC's motion to compel based on an agency theory is rejected.

GC next argues that it may compel arbitration under the doctrine of equitable estoppel. Equitable estoppel allows a nonsignatory to an agreement to compel arbitration in two different circumstances, only one[3] of which is relevant here:

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of the signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate.

---

[3] Application of equitable estoppel is also warranted "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *German Am. Fin. Advisors*, 969 N.E.2d 621, 628 (Ind. Ct. App. 2012) (quoting *MS Dealer v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

*German Am. Fin. Advisors & Trust Co. v. Reed*, 969 N.E.2d 621, 627 (Ind. Ct. App. 2012) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Plaintiff's claims are not based on the terms of the Credit Card Agreement. Plaintiff alleges GC violated the FDCPA by informing her that any dispute of the debt must be in writing. "Indeed, Plaintiff's claims are not even of a type that could be asserted in defense against a creditor suing on a breach of the cardholder agreement" because Synchrony Bank is not a "debt collector" under the FDCPA. *Fox v. Nationwide Credit, Inc.*, No. 09-cv-7111, 2010 WL 3420172, at *6 (N.D. Ill. Aug. 25, 2010) (rejecting Nationwide Credit's argument that plaintiff should be compelled to arbitrate her claims based on the arbitration provision in plaintiff's cardholder agreement). Therefore, GC may not compel arbitration under the doctrine of equitable estoppel.

**B.     Waiver**

For the sake of completeness, the court will next address Plaintiff's argument that GC waived its right to arbitrate.

"A party may waive a contractual right to arbitrate expressly or impliedly." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008); *see also St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585 (7th Cir. 1992). The issue presented is whether the court can infer that GC impliedly waived its right to arbitrate by litigating this case in this forum. This requires the court to determine, based on all the facts and circumstances, whether GC has acted inconsistently with the right to arbitrate. *Halim*, 516 F.3d at 562 (quoting *Sharif v. Wellness Int'l*

*Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)). Diligence, or a lack thereof, weighs heavily in the court's determination. *Id.*

GC first argues it acted diligently by asserting its right to arbitrate when it first learned of that right in March 2017. Giving GC the benefit of all doubt, it still does not explain why GC did not assert the arbitration agreement as a defense in its Answer, which was filed approximately six weeks *after* the March 10 letter. At that time, GC had to know that Plaintiff was not going to agree to arbitrate her claims.

Second, GC argues the court should not take into consideration the fact that it took an additional five months to file the instant Motion to Compel Arbitration "because that delay is a result of Plaintiff's inaction, not [GC's] interaction with the litigation process." (Filing No. 112, Reply at 9). Her inaction, GC continues, forced it to collect additional evidence necessary to move to compel arbitration.

The March 10 letter gave Plaintiff three days to respond. Thus, GC should have known by the close of business on March 13 that Plaintiff would not consent to arbitrate her FDCPA claims. Furthermore, GC's additional evidence consists of just two affidavits from Mark Schordock and Martha Koehler. Attached to Koehler's declaration are five exhibits related to Plaintiff's credit card account, including her Sam's Club MasterCard bill for the period ending January 15, 2016. (*See* Filing No. 75-1, Sam's Club Discover Card and MasterCard documentation). Acquiring these affidavits, which were only a few pages long, should not have taken five months. Schordock is Executive Vice President of GC Service's Operations and Koehler is a Litigation Support Manager at Synchrony Bank, the entity with whom GC contracts to collect its debts. And as for the five exhibits

attached to Koehler's declaration, those documents should have been easily accessible electronically within Synchrony Bank's systems. (Koehler Decl. ¶ 3).

Lastly, GC contends Plaintiff cannot prove that it was prejudiced by its engagement in the litigation process. The court does not agree. This case has been on the docket for over a year-and-a-half. The parties have vigorously engaged in motion[4] practice, have had their fair share of discovery disputes, and a class has been certified. Ordering Plaintiff to go to arbitration now due to GC's delay is simply not fair. The court therefore concludes, based on the facts and circumstances of this case, that GC acted inconsistently with its right to arbitration. GC's motion to compel arbitration must be **DENIED**.

### C. Class Action Waiver

Lastly, GC argues that, even if the court finds Plaintiff should not be compelled to submit her claims to arbitration, the court should still decertify the class because Plaintiff separately waived her right to bring, or participate in, a class action. Therefore, GC continues, she is not an adequate representative.

The provision at issue applies to a lawsuit between Plaintiff and Synchrony Bank. (*See* Credit Card Agreement, Section III at 7 ("**YOU AGREE NOT TO PARTICIPATE IN A CLASS . . . ACTION AGAINST US IN COURT OR ARBITRATION**"). As noted above, "us" is defined as Synchrony Bank. Because

---

[4] It is not lost on the court that GC filed the Motion to Compel Arbitration *after* the court denied its Motion to Dismiss and granted Plaintiff's Second Amended Motion for Class Certification.

Synchrony Bank is not a party to this lawsuit, Plaintiff did not waive her right to bring a class action against GC.

## III. Conclusion

For the reasons set forth above, the court **DENIES** GC Limited Partnership's Motion to Dismiss, Compel Arbitration, and Stay Action Pending Arbitration (Filing No. 74).

**SO ORDERED** this 6th day of February 2018.

                                         RICHARD L. YOUNG, JUDGE
                                         United States District Court
                                         Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.